IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 10, 2017 Session

## JUDITH MOORE-PENNOYER v. STATE OF TENNESSEE ET AL.

**Appeal by Permission from the Court of Appeals
Circuit Court for Knox County
No. 356514            Jon Kerry Blackwood, Special Judge**

_____

**No. E2015-01701-SC-R11-CV – Filed March 28, 2017**
_____

We granted permission to appeal to clarify the nature of the employment relationship of a trial judge's secretarial assistant. We hold that a trial judge's secretarial assistant is an at-will employee. As a result, the secretarial assistant's employment may be terminated at any time during the term of the trial judge to whom he or she is assigned, either by the judge or the secretarial assistant. If the relationship is not terminated during the trial judge's term, the secretarial assistant's employment automatically terminates when the trial judge's service ends. Because the plaintiff secretarial assistant's employment automatically ended when the trial judge's term ended and because she remained employed until the end of the trial judge's term, as a matter of law, the defendant did not tortiously interfere with the plaintiff's employment relationship. Accordingly, we reverse the judgment of the Court of Appeals, vacate the judgment of the trial court, and remand for entry of a judgment granting the defendant's motion to dismiss the plaintiff's complaint, and for any further proceedings, consistent with this decision, that may be necessary in the trial court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Judgment of the Trial Court Vacated and Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert Slatery, III, Attorney General & Reporter; Andrée S. Blumstein, Solicitor General; and Stephanie Bergmeyer, Assistant Attorney General, for the appellant, William T. Ailor.

David H. Dunaway and Rick A. Owens, LaFollette, Tennessee, for the appellee, Judith Moore-Pennoyer.

## OPINION

### I. Factual Background

This case began as an interlocutory appeal from the trial court's denial of William T. Ailor's motion to dismiss the complaint filed by Judith Moore-Pennoyer. As a result, there is no factual record, and the facts alleged in Ms. Moore-Pennoyer's complaint are taken as true.[1]

Beginning in January 1990, Ms. Moore-Pennoyer was employed as a secretarial assistant assigned to the Circuit Court for Knox County. For the first six years, she assisted three circuit judges. For the next eighteen years, she served as secretarial assistant to only one judge—Circuit Judge Harold Wimberly.

In 2014, Judge Wimberly sought re-election to a new eight-year term that would begin on September 1, 2014. However, on August 7, 2014, Judge Wimberly lost the contested general election to William T. Ailor. Thus, Judge Wimberly's tenure ended by operation of law on August 31, 2014. At some point after the election, Ms. Moore-Pennoyer communicated to Mr. Ailor her wish to continue in her position as trial judge secretarial assistant.[2] On August 26, 2014, approximately one week before the beginning of his term and prior to his taking the oath of office, Mr. Ailor informed Ms. Moore-Pennoyer that he had selected another person to fill the position of secretarial assistant and would not require her services after taking office. The next day, August 27, 2014, the Human Resources Manager for the Administrative Office of the Courts provided Ms. Moore-Pennoyer with a separation notice, confirming that her employment would terminate effective Friday, August 29, 2014, the final business day of Judge Wimberly's term.

---

[1] Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 854-55 (Tenn. 2010).

[2] We refer to the defendant as "Mr. Ailor" rather than "Judge Ailor" because the allegations of the complaint concern actions and communications that occurred before Mr. Ailor's term as judge began. No disrespect is intended by the use of this reference, nor does this reference have any relevance to the legal issue raised in the courts below concerning Mr. Ailor's status as a state employee before taking the oath of office.

On the day her employment ended, August 29, 2014, Ms. Moore-Pennoyer filed a lawsuit in circuit court against the State of Tennessee and Mr. Ailor (collectively "the defendants"). She alleged a number of claims in her complaint, including violations of the Tennessee Human Rights Act and the Tennessee Disability Act. She also alleged a claim of tortious interference with her employment relationship against Mr. Ailor in his individual capacity.

The defendants did not file answers to Ms. Moore-Pennoyer's complaint. Rather, on October 29, 2014, the defendants filed a joint motion to dismiss the plaintiff's complaint, alleging the following grounds for dismissal: (1) Mr. Ailor was entitled to absolute immunity as he was acting at all times in his official judicial capacity; (2) Ms. Moore-Pennoyer's complaint failed to state a claim for breach of contract; (3) the trial court lacked jurisdiction to consider Ms. Moore-Pennoyer's breach of contract claim; (4) Ms. Moore-Pennoyer's complaint failed to state a claim under either the Tennessee Human Rights Act or the Tennessee Disability Act; and (5) Ms. Moore-Pennoyer's complaint failed to state a claim for tortious interference with a business relationship.

Ms. Moore-Pennoyer did not respond to the motion to dismiss, but on November 27, 2014, she filed a notice of claim with the Tennessee Department of the Treasury's Division of Claims Administration ("Claims Administration"). Thereafter, on December 29, 2014, Ms. Moore-Pennoyer asked the circuit court to stay its consideration of the defendants' motion to dismiss pending the determination of the Claims Division on whether to accept her claim. On January 28, 2015, the circuit court granted the requested stay. On February 23, 2015, the Claims Administration filed a notice of transfer of Ms. Moore-Pennoyer's claim to the Claims Commission. On March 2, 2015, Ms. Moore-Pennoyer filed a complaint in the Claims Commission, alleging that the State, via the Administrative Office of the Courts ("AOC"), and Mr. Ailor had breached a contractual obligation to the plaintiff and subjected her to discrimination based on her age and disability.

On March 17, 2015, the defendants renewed their joint motion to dismiss. In addition to the grounds initially alleged in support of their request for dismissal, the defendants argued that Ms. Moore-Pennoyer had waived her right to proceed in circuit court by filing a complaint in the Claims Commission based on the same acts or omissions. The defendants based this ground for dismissal on a statute, which provides that "[c]laims against the [S]tate [based on the acts or omissions of state employees] shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee." Tenn. Code Ann. § 9-8-307 (b) (2012) [hereinafter "statutory waiver provision"].

About three months after the defendants renewed their request for dismissal, Ms. Moore-Pennoyer filed an amended complaint, in which she limited her lawsuit against Mr. Ailor in his individual capacity to "a [claim of] malicious, willful, and wanton tortious interference with . . . [the] employment relationship that [the plaintiff] had with the [d]efendant, State of Tennessee, and more specifically the Administrative Office of the Courts for the State of Tennessee . . . ."[3] In response to the defendants' renewed motion for dismissal, Ms. Moore-Pennoyer asserted that Mr. Ailor was not a state officer or employee for purposes of the statutory waiver provision when he tortiously interfered with her employment relationship because he had not taken the oath required before entering upon the duties of his judicial office. See Tenn. Code Ann. § 17-1-104 (2012). Mr. Ailor responded that he had acted as a state employee or officer for purposes of the statutory waiver provision when he made staffing decisions concerning his judicial office, even though he had not taken the oath of office or entered upon the term of office.

The trial court held a hearing on the defendants' motion to dismiss on July 8, 2015, and, later that month, entered an order dismissing Ms. Moore-Pennoyer's claims against the State and dismissing the State as a party. The trial court declined to dismiss Ms. Moore-Pennoyer's claim against Mr. Ailor in his individual capacity, reasoning that Mr. Ailor was not a state officer or employee for purposes of the statutory waiver provision before taking the oath of office. Nevertheless, the trial court granted Mr. Ailor permission to seek an interlocutory appeal, phrasing the question for appeal as whether Mr. Ailor acted "as a state officer or employee for purposes of Tenn. Code Ann. § 9-8-307 when he made administrative staffing decisions during the period after his election but before his induction ceremony." The trial court also granted Ms. Moore-Pennoyer permission to seek an interlocutory appeal from its dismissal of her claims against the State and its dismissal of the State as a party. Tenn. R. App. P. 9.

The Court of Appeals denied Ms. Moore-Pennoyer's interlocutory appeal, accepted Mr. Ailor's interlocutory appeal, rephrased the issue as "whether a person who has prevailed in a judicial election, but not yet assumed the office of judge, acts as a 'state officer or employee' for purposes of the [statutory] waiver provision," and ultimately affirmed the trial court's decision.[4] The Court of Appeals held that, although Mr. Ailor was duly elected on August 7, 2014, he was not acting as a state officer or employee for purposes of the statutory waiver provision when he advised Ms. Moore-

---

[3] Statements the plaintiff's lawyer made in subsequent pleadings and during the hearing on the motion to dismiss confirmed that her amended complaint had limited her lawsuit against Mr. Ailor to the claim of tortious interference with her employment relationship.

[4] Moore-Pennoyer v. State, No. E2015-01701-COA-R9-CV, 2016 WL 1084716, at *1 (Tenn. Ct. App. Mar. 21, 2016).

Pennoyer that he had selected another person to fill the position of secretarial assistant upon taking office.[5]

Mr. Ailor filed an application for permission to appeal in this Court. Tenn. R. App. P. 11. We granted the application, and in the order doing so, stated our particular interest in briefing and argument on the following issues:

1. Is a judicial [secretarial] assistant an at-will employee whose employment can terminate at any time at the will of either the administrative assistant or the judge?

2. Is a judicial [secretarial] assistant an at-will employee whose employment terminates when the judge who hired the assistant is no longer serving as a judge?

Moore-Pennoyer v. State, No. E2015-01701-SC-R11-CV (Tenn. Aug. 18, 2016) (order granting the application and specifying particular issues of interest to the Court for briefing and argument).[6]

## II. Standard and Scope of Review

Because this appeal involves the trial court's denial of a motion to dismiss for failure to state a claim, the following standards govern our review. "We accept as true all factual allegations in the complaint." Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 854-55 (Tenn. 2010). But "[w]e review the trial court's legal conclusions regarding the adequacy of the complaint de novo." Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011). "Moreover, [we] are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." Id. at 427.

Additionally, unlike an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3, the scope of an interlocutory appeal is ordinarily "limited to 'those matters clearly embraced within' the issues certified in the orders of the trial court and the intermediate appellate court." Sneed v. City of Red Bank, 459 S.W.3d 17, 22 (Tenn. 2014) (quoting Tenn. Dep't of Mental Health & Mental Retardation v. Hughes, 531 S.W.2d 299, 300 (Tenn. 1975); Banks v. Elks Club Pride of Tenn. 1102, 301 S.W.3d 214,

---

[5] Id. at *4.

[6] Ms. Moore-Pennoyer did not file an application for permission to appeal from the Court of Appeals' denial of her interlocutory appeal; thus, the trial court's rulings dismissing her claims against the State and dismissing the State as a party are not before this Court. Also not before this Court are any proceedings Ms. Moore-Pennoyer still has pending before the Claims Commission.

227 n. 16 (Tenn. 2010); In re Bridgestone/Firestone, 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008)). However, this Court may grant review of intermediate appellate court decisions whenever there is a "need for the exercise of the Supreme Court's supervisory authority." Tenn. R. App. P. 11(a). We granted review in this interlocutory appeal in the exercise of this supervisory authority to prevent needless litigation and eliminate confusion concerning the nature of the employment relationship of a trial judge's secretarial assistant. The courts below focused on the specific issue raised by the parties of whether the statutory waiver provision of Tennessee Code Annotated section 9-8-307(b) applied and required dismissal of Ms. Moore-Pennoyer's complaint. In the exercise of our supervisory authority, we address the broader question of whether Ms. Moore-Pennoyer's complaint must be dismissed for failure to state a claim based on established policies of the Judicial Department of Tennessee of which this Court is the sole arbiter.

## III. Analysis

The powers of the government of Tennessee are constitutionally divided "into three distinct departments: the Legislative, Executive, and Judicial." Tenn. Const. art. II, § 1. Another article of the Tennessee Constitution specifies that "the judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace." Tenn. Const. art. VI, § 1. As "a direct creature of the Constitution," the Tennessee Supreme Court "constitutes the supreme judicial tribunal of the [S]tate." Barger v. Brock, 535 S.W.2d 337, 340 (Tenn. 1976); see also In re Bell, 344 S.W.3d 304, 313 (Tenn. 2011). This Court has broad authority over the Tennessee Judicial Department. In re Bell, 344 S.W.3d at 313; Belmont v. Bd. of Law Exam'rs, 511 S.W.2d 461, 463 (Tenn. 1974). The General Assembly has acknowledged this Court's "broad conference of full, plenary and discretionary power," Tenn. Code Ann. § 16-3-504 (2009), and its "general supervisory control over all the inferior courts of the [S]tate," id. § 16-3-501. And the General Assembly has expressly recognized that these powers are not a matter of legislative largess but derive from "the common law as it existed at the time of the adoption of the constitution of Tennessee and of the power inherent in a court of last resort." Id. § 16-3-503; see also In re Bell, 344 S.W.3d at 313. This Court has exercised its supervisory and inherent power to promulgate rules governing the practice and procedure before the courts of this State, State v. Mallard, 40 S.W.3d 473, 481 (Tenn. 2001); to adopt ethics rules for judges, including guidelines for discipline that should be imposed for violations of those rules, In re Bell, 344 S.W.3d at 313; to prescribe and administer rules pertaining to the licensing and admission of attorneys, Belmont, 511 S.W.2d at 462; to adopt rules regulating the practice of law, including ethics rules for lawyers and rules regarding the disciplinary process and violations of those rules, Hughes v. Bd. of Prof'l Responsibility, 259 S.W.3d 631, 640 (Tenn. 2008); and to prevent the unauthorized practice of law, Petition of Burson, 909 S.W.2d 768, 773 (Tenn. 1995). And, as the constitutionally designated

repository of judicial power that exercises supervisory authority over the Judicial Department, this Court, and only this Court, has the authority to prescribe rules, policies, and procedures relating to matters essential to the judicial function. See Tenn. Const. art. II, § 2 ("No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."); Mallard, 40 S.W.3d at 481. In such matters, this Court "is supreme in fact as well as in name." Id. (citing Barger, 535 S.W.2d at 341).

Of course, as this Court has previously recognized, "it is impossible to preserve perfectly the 'theoretical lines of demarcation between the executive, legislative and judicial branches of government.'" Petition of Burson, 909 S.W.2d at 774 (quoting Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975)). "Indeed there is, by necessity, a certain amount of overlap because the three branches of government are interdependent." Id. (citing Underwood, 529 S.W.2d at 47). For example, the Executive and Legislative Departments have created personnel policies for all state employees, and on occasion, have applied these personnel policies to Judicial Department employees. At other times, however, the General Assembly has expressly exempted the Judicial Department from such policies. One example of such an exemption that is particularly pertinent to this appeal appears in the Tennessee Excellence, Accountability, and Management Act of 2012—an act that replaced the civil service laws.[7] Although this statute generally applies "to all personnel in state service," Tenn. Code Ann. § 8-30-102(a) (2016), it does not apply to "the judicial branch of state government including, but not limited to, employees of the administrative office of the courts." Id. § 8-30-102(b). Thus, in this area, the Tennessee Supreme Court retains exclusive supervisory authority to establish and interpret personnel policies applicable to Judicial Department employees, including the employment status of a trial judge's secretarial assistant.[8]

We begin this task by reiterating the well-established principle that "Tennessee recognizes the employment-at-will doctrine as 'the fundamental principle controlling the relationship between employers and employees.'" Yardley v. Hosp. Housekeeping Sys., 470 S.W.3d 800, 804 (Tenn. 2015) (quoting Mason v. Seaton, 942 S.W.2d 470, 474 (Tenn. 1997)). This doctrine allows either the employer or the employee to terminate the employment relationship at any time, with or without cause. Id. "The employment-at-will doctrine 'recognizes that employers need the freedom to make their own business

---

[7] The Tennessee Excellence, Accountability, and Management (T.E.A.M.) Act of 2012 repealed and replaced the civil service statutes. Act of April 24, 2012, ch. 800, § 1, 2012 Tenn. Pub. Acts 940. Judicial Branch employees were also excluded from the civil service statutes in effect when Ms. Moore-Pennoyer was first hired as a trial judge secretarial assistant in 1990. See Tenn. Code Ann. § 8-30-101(23)(B) (1988).

[8] The General Assembly "may enact statutes that aid th[is] Court in the exercise of its inherent supervisory power," although it "may not enact statutes that frustrate or are in direct conflict with th[is] Court's exercise of its powers." In re Bell, 344 S.W.3d at 314 n13.

judgments without interference from the courts.'" Williams v. City of Burns, 465 S.W.3d 96, 108 (Tenn. 2015) (quoting Mason, 942 S.W.2d at 474). Ms. Moore-Pennoyer has failed to persuade us that a trial judge's secretarial assistant should not be subject to the generally applicable employment-at-will doctrine.[9]

We do not agree with Ms. Moore-Pennoyer's assertion that she had an implied employment contract of at least one year with the AOC because she held a position as "an annual, salaried, budgeted employee."[10] The inclusion of funds in the Judicial Department's budget for the purpose of compensating trial judge secretarial assistants does not give rise to an implied annual contract of employment for any particular trial judge secretarial assistant. Moreover, the role of the AOC in performing human resources functions for the Judicial Department does not give rise to implied contracts between the AOC and Judicial Department employees. This is not to say, of course, that Ms. Moore-Pennoyer is incorrect in her description of the functions the AOC provides. Indeed, the AOC performs very important functions in the Judicial Department of Tennessee. This Court designates the administrative director of the AOC. Tenn. Code Ann. § 16-3-502(1) (2009); see also Id. § 16-3-802 (providing that the administrative director is appointed by and serves at the pleasure of the Tennessee Supreme Court). The administrative director works as "the chief administrative officer of the courts," id. § 16-3-502(1), "under the supervision and direction of the [C]hief [J]ustice," id. § 16-3-803(a). The administrative director "assist[s] the [C]hief [J]ustice in the administration of the state court system to the end that litigation may be expedited and the administration of justice improved." Id. § 16-3-803(a). Under the leadership of the administrative

---

[9] There are some exceptions to the employment-at-will doctrine. For example, one exception is that an employee may not be fired for taking an action encouraged by public policy. Yardley, 470 S.W. 3d at 804. However, none of these exceptions are applicable to the facts of this case.

[10] Ms. Moore-Pennoyer also argues that she had an implied contract of employment for one year "as a budgeted, salaried employee whose employment started on an annual basis from July 1 of each year to June 30 of the succeeding year." As support for this argument, she asserts that "a hiring at so much per period, is a hiring for that period, provided there are no circumstances to the contrary." Ball v. Overton Square, Inc., 731 S.W.2d 536, 538 (Tenn. Ct. App. 1987) (citing Delzell v. Pope, 294 S.W.2d 690, 694 (Tenn. 1956)). Delzell adopted a minority rule, to which even fewer jurisdictions currently subscribe. See David B. Harrison, Annotation, Modern Status as to Duration of Employment Where Contract Specifies No Term but Fixes Daily or Longer Compensation, 93 A.L.R.3d 659 § 2(a) (Most Recent Cases from 2013). Nevertheless, we need not and do not herein determine the continuing validity of Delzell because, even applying the minority rule it adopted, the facts alleged in the complaint, taken as true, are insufficient to establish that Ms. Moore-Pennoyer was employed on an annual basis. While it is true that the Judicial Department submits an annual budget and that fiscal years run from July 1 to June 30, salaries of secretarial positions "shall be payable in equal *monthly* installments." Tenn. Code Ann. § 17-1-402(b) (2009) (emphasis added). Thus, based on this statute, she would have been hired at most for a month-to-month term, and Ms. Moore-Pennoyer received compensation through the end of the month of August 2014.

director, the AOC must "perform duties that are necessary for the orderly administration of justice within the [S]tate," id. § 16-3-502(2), and provide "administrative support to all of the courts of the [S]tate," id. § 16-3-502(3).

Two of the AOC's duties are maintaining and submitting the budget of the Judicial Department, under the supervision and oversight of this Court. Id. § 16-3-803(a), (c)(1). To fulfill this role, the administrative director of the AOC must "administer the accounts of the state court system," and "draw and approve all requisitions for the payment of public moneys appropriated for the maintenance and operation of the state court system . . . including payroll warrants . . . ." Tenn. Code Ann. § 16-3-803(c)(2). But despite the many critically important functions it provides the Judicial Department, the AOC is not authorized to hire, supervise, or remove a trial judge's secretarial assistant. This authority resides in the trial judge.

Ms. Moore-Pennoyer correctly points out that "[s]ecretarial assistance to trial judges and chancellors of courts of record . . . shall be provided on the basis of need by the administrative director of the courts." Tenn. Code Ann. § 17-1-401(a) (2009). It is also true, as Ms. Moore-Pennoyer points out, that "the salaries for secretarial positions shall be fixed within the limits of the appropriation for salaries by the administrative director of the courts and the commissioner of finance and administration, with the approval of the [C]hief [J]ustice of the [S]upreme [C]ourt." Id. § 17-1-402(a). But what Ms. Moore-Pennoyer apparently fails to recognize is that these statutes clearly limit the AOC's responsibility to determining whether a particular trial judge needs secretarial assistance and to fixing the salary of any secretarial assistant position for which a need has been determined to exist. Once a secretarial assistant position is authorized, the trial judge, not the AOC, has the authority to select, supervise, and remove the secretarial assistant.[11]

Indeed, other statutes explicitly recognize that the authority to appoint a secretarial assistant resides with the trial judge, even though the trial judge does not have the authority to fix the secretarial assistant's salary. For example, when a special judge is appointed to replace a judge incapacitated by sickness or another disability, the special judge has

> all the power and authority of the regular judge or chancellor in whose place the person is appointed, . . . , *including the power to appoint a secretary at the same salary and under the same provisions as the regular judge or chancellor may have,* which shall be in lieu of the secretarial help to which the regular judge or chancellor is entitled . . . .

---

[11] We need not and do not determine today where hiring, supervisory, and removal authority resides when trial judges share a secretarial assistant and one trial judge retires while one or more continues service.

Tenn. Code Ann. § 17-2-117(a) (2009) (emphasis added). Likewise, when a new trial judge position is created to accommodate growth in the judiciary, a secretarial assistant position for that judge is also created, and "*[t]he [new] judge shall select a suitable person to fill the position of secretary and that person shall receive the same compensation, payable in the same manner, as is provided by law for the secretary of the other judges in the district.* The secretary shall perform the duties assigned by the judge." Tenn. Code Ann. § 16-2-505(c) (2009) (emphasis added). These statutes reflect the longstanding judicial policy that the authority to select, supervise, and remove a trial judge's secretarial assistant resides with the trial judge. It would be inconsistent to hold that special trial judges and trial judges serving in newly created positions are authorized to select their own secretarial assistants but also hold that persons newly elected to existing trial judge positions do not have the same authority to select their own secretarial assistants and are required to retain the secretarial assistant chosen by the person who previously served as judge.

Indeed, practical policy considerations strongly militate against such a holding and in favor of our recognition of the at-will nature of the employment relationship between a trial judge and a trial judge's secretarial assistant. The trial judge and secretarial assistant work together closely. The trial judge's ability to repose trust and confidence in the secretarial assistant is crucial to the trial judge's ability to carry out his or her own duties.[12] The trial judge must require "court staff, court officials, and others subject to the judge's direction and control," including a secretarial assistant, "to act in a manner consistent with the judge's obligations" under the Code of Judicial Conduct. Tenn. Sup. Ct. R. 10, RJC 2.12(A). Any policy requiring an incoming judge to continue the employment of an outgoing judge's secretarial assistant, whom the incoming judge may not know and with whom the incoming judge may not have an established positive working relationship, would pose a risk of undermining the efficient functioning of the judicial system. To avoid this risk, a trial judge must remain free to select, supervise, and remove the secretarial assistant, and in turn, the secretarial assistant must remain free to leave the employment at any time should the secretarial assistant's working relationship with the trial judge become strained or dysfunctional. These purposes are served by the employment-at-will-doctrine. See Yardley, 470 S.W.3d at 804.

Accordingly, we hold that when a trial judge's service ends, whether by term expiration, death, resignation, election defeat, or otherwise, the secretarial assistant's employment also ends. Although secretarial assistants to outgoing judges may seek to obtain employment with an incoming judge, the incoming judge has no obligation to hire the secretarial assistant, and the secretarial assistant has no claim of right to continue in

---

[12] We agree with the Wisconsin Supreme Court that, "a unique relationship exists between a judge and his or her judicial assistant. Judges share their labors and confidences with their assistants, rely upon their assistants' experience in managing an increasingly complex caseload, and entrust highly sensitive matters to their assistants' good judgment." Barland v. Eau Claire Cnty., 575 N.W.2d 691, 704 (Wis. 1998).

the position. It is true that trial judge secretarial assistants have occasionally been extended temporary employment in extraordinary circumstances, in the interim between a judge leaving office unexpectedly during a term (most often because of death or sudden, unexpected resignation) and a new judge being selected. These temporary and exceptional employment arrangements were made at the recommendation of the administrative director of the AOC based on the availability of funding, and with the approval of this Court, for the purpose of facilitating the efficient functioning of the judicial system until a new judge could be selected. The AOC was acting well within its authority in making these arrangements. Nevertheless, such rare and temporary arrangements do not alter the at-will nature of a trial judge secretarial assistant's employment status.

Having defined the nature of Ms. Moore-Pennoyer's employment status, we conclude that her complaint fails to state a claim for tortious interference with her employment relationship. A party seeking to impose liability for such a claim must demonstrate the following elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002) (footnotes and citations omitted). Ms. Moore-Pennoyer has failed to allege facts showing an existing employment relationship. To the contrary, the facts as alleged in the amended complaint establish that the plaintiff's employment relationship ended by virtue of Judge Wimberly's defeat and that the separation notice she received advised that her employment would end on the last business day of his term. By advising her that he would be hiring another person to fill the secretarial assistant position when his term began, Mr. Ailor neither fired the plaintiff nor interfered with her at-will employment relationship with Judge Wimberly. He simply advised her that her attempt to obtain employment as his secretarial assistant had been unsuccessful. While the plaintiff had the right to seek new employment with Mr. Ailor, she had no entitlement to the position after August 29, 2014, the last business day of Judge Wimberly's term. Thus, the facts establish that Mr. Ailor, whether or not deemed a state employee before September 1, 2014, as a matter of law did not tortiously interfere with Mr. Moore-Pennoyer's employment relationship because one did not exist after August 29, 2014, and she remained in the secretarial assistant position until August 29, 2014. Thus, Ms. Moore-Pennoyer has failed to state a claim for relief, and her complaint against Mr. Ailor in his individual capacity must fail.

The Tennessee judicial system values the service of all persons who have worked as secretarial assistants to trial judges throughout the course of its history. This Court acknowledges that judicial staff members may experience unexpected and difficult circumstances when a judge unexpectedly leaves office because of death or election defeat. Nevertheless, these circumstances must be balanced against the consequent harm the judicial system would suffer were incoming judges required to continue the employment of judicial staff with whom they have no prior working relationship.

## IV. Conclusion

In the exercise of our supervisory authority over the Judicial Department, we reverse the judgment of the Court of Appeals, vacate the judgment of the trial court, and remand for entry of a judgment granting Mr. Ailor's motion to dismiss Ms. Moore-Pennoyer's complaint, and for any further proceedings, consistent with this decision, that may be necessary in the trial court. Costs of this appeal are taxed to Judith Moore-Pennoyer and her surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE