IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
May 28, 2020 Session[1]

## BRICE COOK v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
No. 08-07496      Lee V. Coffee, Judge

─────────────────────────────────────

**No. W2018-00237-SC-R11-PC**

─────────────────────────────────────

The dispositive question in this appeal is whether the post-conviction judge should have recused himself because his impartiality might reasonably be questioned. We answer this question in the affirmative and hold that the post-conviction judge was obligated to recuse himself in this case even though the petitioner failed to file a motion for recusal. Accordingly, the judgment of the Court of Criminal Appeals is reversed; the judgment of the post-conviction court is vacated; and this matter is remanded to the trial court for a new post-conviction hearing before a different judge.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

André C. Wharton and Rebecca R. Hodous, Memphis, Tennessee, for the appellant, Brice Cook.

───────────────────

[1] This case was set on a Nashville docket, but we heard oral argument through videoconference under this Court's emergency Order of April 24, 2020, restricting court proceedings because of the COVID-19 pandemic.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Nicholas W. Spangler, Senior Assistant Attorney General; Amy Weirich, District Attorney General; and Leslie Byrd and Leslie Fouche, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

On November 25, 2008, a Shelby County Grand Jury returned a two-count indictment charging the petitioner, Brice Cook, with first-degree premeditated murder for the fatal shooting of Ms. Shantell Lane and charging the petitioner's brother with facilitation of the murder. State v. Cook, No. W2012-00406-CCA-R3-CD, 2013 WL 9570493, at *1 (Tenn. Crim. App. Sept. 4, 2013), perm. app. denied (Tenn. Feb. 11, 2014). In December 2009, the men were tried jointly and convicted as charged. Id. On August 30, 2010, the trial court granted the petitioner a new trial, finding that testimony of a prosecution witness deprived the petitioner of his constitutional right to confront the witnesses against him in violation of Bruton v. United States, 391 U.S. 123, 137 (1968). Cook, 2013 WL 9570493, at *1. Shortly after granting the petitioner's motion for new trial, the judge who presided at the petitioner's first trial retired, and another judge was assigned to the petitioner's case.

The petitioner's second trial began on October 31, 2011. The petitioner admitted to shooting the victim but claimed he had acted in self-defense. In summary, the proof showed that Ms. Jasmin Harris ended a romantic relationship with the petitioner to pursue a romantic relationship with the victim. On the day the victim was killed, the petitioner exchanged a series of angry text messages with the victim and Ms. Harris and then drove to the apartment they shared with two others. The victim was not home when the petitioner arrived, but she arrived a short time later. Prosecution eyewitnesses to the shooting testified that when the victim exited her vehicle, the petitioner began shooting in her direction. According to these witnesses, the victim ran back to her vehicle and got inside, but the petitioner followed and shot the victim twice as she sat in the vehicle. Defense eyewitnesses to the shooting testified to seeing fire and flashes and what appeared to them to be gunfire emanating from the victim's vehicle before the petitioner fired his weapon. The proof showed that the victim died from two gunshots wounds—one to her abdomen and another to her back. Cook, 2013 WL 9570493, at *1.[2]

---

[2] A more detailed recitation of the proof offered at the petitioner's trial may be found in the Court of Criminal Appeals' opinion resolving the petitioner's appeal as of right from the jury's verdict. See Cook, 2013 WL 9570493, at **1-6.

The jury at the second trial convicted the petitioner of first-degree premeditated murder, and he received a life sentence. The petitioner appealed. The Court of Criminal Appeals affirmed the petitioner's conviction and sentence, and this Court denied review. State v. Cook, No. W2012-00406-SC-R11-CD (Order) (Tenn. Feb. 11, 2014) (denying the petitioner's application for permission to appeal).

On September 22, 2014, the petitioner timely filed a petition for post-conviction relief, which was assigned to Judge Lee V. Coffee, the same judge who presided over the petitioner's second trial. The petitioner claimed ineffective assistance of counsel and alleged several factual grounds in support of this claim, including, as relevant to this appeal, that his trial attorneys failed to communicate a plea offer to him in a timely manner.

The post-conviction hearing convened on November 21, 2017. Six witnesses testified for the petitioner, including Dr. James Walker, a forensic psychologist; Mr. Byron K. Cook, the petitioner's father; Ms. Lorna McClusky, an attorney who represented the petitioner at his second trial; Mr. David Zak, the prosecuting attorney at both of the petitioner's trials; Mr. William Massey, lead counsel for the petitioner at his second trial; and the petitioner.

We need not recite each witness's testimony in detail and summarize the testimony only as necessary to provide context for the post-conviction judge's comments that serve as the basis for this appeal. We begin with Ms. McClusky's testimony.

Ms. McClusky, one of the petitioner's trial attorneys, testified that she had reviewed the petitioner's case file and had found a note dated September 9, 2011, reflecting that Mr. Massey had met with the petitioner's father and explained in detail a "confirmed" plea offer that had been extended to the petitioner. She stated that "confirmed" plea offer meant that the prosecution had definitely agreed to the offer and that it was not just a part of plea negotiations.

Ms. McClusky said that the confirmed offer required the petitioner to plead guilty to second degree murder and aggravated robbery. In exchange for these guilty pleas, the petitioner would have received a sentence of 13.5 years at 85% release eligibility on the second degree murder charge, which would have been served consecutively to a sentence of 7.2 years at 20% release eligibility on the aggravated robbery charge.[3]

---

[3] The twenty percent release eligibility percentage is atypical but accurately reflects Ms. McClusky's testimony.

Ms. McClusky stated that her notes showed that this confirmed offer was conveyed to the petitioner on October 18, 2011, a little over a month after Mr. Massey met with the petitioner's father. Ms. McClusky testified that her notes indicated the petitioner "was very pleased with the offer and said he would take it." Ms. McClusky had underlined the words "very pleased" in her notes to reflect the extent of the petitioner's satisfaction with the offer. Ms. McClusky testified that the petitioner must have changed his mind about the offer because the case was tried, but she had no notes indicating that the petitioner changed his mind.

Mr. Massey testified that he had not reviewed the petitioner's case file the week before the post-conviction hearing because he had been in trial. He also had not reviewed the case file in the years the post-conviction petition had been pending, despite being aware that the offer would be an issue. Nevertheless, Mr. Massey testified that he could not recall any confirmed offer being made to the petitioner. Mr. Massey recalled that the petitioner and the petitioner's father wanted a plea offer for voluntary manslaughter but that the prosecuting attorney would not agree to that resolution. Mr. Massey did not dispute Ms. McClusky's testimony concerning the notes she had found in the petitioner's case file about the confirmed offer, nor did he disagree with Ms. McClusky as to the meaning of a "confirmed" offer. Mr. Massey acknowledged that he could have forgotten about the offer as he had not reviewed the petitioner's file. He expressed his willingness to review the petitioner's file after the hearing and notify appointed counsel should he find any information about the offer that would change his testimony. In making this suggestion, Mr. Massey again stated that it was possible he had just forgotten about the offer.

In response to Mr. Massey's suggestion, appointed counsel asked the post-conviction judge for permission to keep the proof open so that the record could be supplemented with any information Mr. Massey provided after reviewing the petitioner's file. The post-conviction judge denied the request and stated that Mr. Massey's testimony had been "clear" and "unequivocal" and that "his memory is clear" that "there was never an offer made, never an offer confirmed, never an offer accepted."

Mr. Zak, the prosecuting attorney at both of the petitioner's trials, testified that he never made any plea offer to the petitioner. He agreed, however, that the defense may have approached him with one or more offers as part of plea negotiations. Mr. Zak stated that if the defense had approached him with the offer Ms. McCluskey described, he would have considered it. However, Mr. Zak believed that he would have rejected that offer because he had already tried the petitioner once and obtained a conviction.

Concerning the offer, the petitioner testified that a young man who worked for defense counsel visited him at the jail shortly before the trial and told him of an offer. The petitioner said that he was eager to accept the offer and asked when could he sign the

- 4 -

paperwork. The young man told the petitioner that he could sign it on the day of the trial. The petitioner testified that he asked defense counsel on the day of trial about signing the paperwork and was told that the offer had been taken off the table.

At the conclusion of the hearing, the post-conviction judge denied the petitioner relief, and in doing so, made the following comments that are the basis of the petitioner's claim that the post-conviction judge should have recused himself.

> Lastly, a plea bargain. A nonexistent plea bargain. A nonexistent deal. I've known Mr. Massey the 27 years I've been in Shelby County . . . . I've known Ms. McClusky for all of her legal career.

> I've tried cases, multiple cases, as a trial lawyer against Lorna McClusky and William Massey. I tried death penalty cases against Lorna McClusky and William Massey. Those are two of the most preeminent lawyers in Memphis, in Shelby County, Tennessee. Two of the most preeminent lawyers in the United States of America. Two of the most preeminent lawyers in the world.

> As Ms. McClusky has testified, she's a fellow in an organization that will not admit more than one percent of all trial lawyers in the world. Mr. Massey is one of the leading lawyers in criminal defense practice. President - - past president of the Tennessee Association of Criminal Defense Lawyers. A board member of the National [A]ssociation of Criminal Defense Lawyers. These are two very, very talented, very good lawyers, very aggressive lawyers that will fight tooth and nail for their client.

> And it's almost absolutely laughable that a lawyer can come to court and say I believe Ms. McClusky and Mr. Massey ineffectively represented Mr. Cook and these are some things that maybe they should have done differently, sitting back as a Monday morning quarterback and evaluating their performance hindsight.

> It reminds me of what Judge Axley used to say when I first got licensed in my first court in Criminal Court when I stopped three years practicing with the Public Defender's Office and was first assigned to Judge Axley's court.

> And Judge Axley used to tell me, "Mr. Coffee, it's kind of like generals in a war. They sit up on a hill on their white horses, beautiful white steed horses, don't do anything. And after the battle is over, they ride

down into the middle of the conflict when people have lost their lives and that war is over and they try to tell those folks how they should have fought that battle differently, how they could have fought that battle better, when all they did was stand up on a hill on a white steed and look down at the action when these folks in the trenches are fighting this war and people are dying all around them."

You have two very accomplished trial lawyers who absolutely told me that, "Judge Coffee, looking back on this case some seven, six years later, there is absolutely nothing that I would have done differently. There's nothing that I could have done differently that would have make [sic] a difference in this case."

These are two of the best trial lawyers in the world. There is absolutely nothing before this Court that would cause this Court to conclude that Mr. William Massey and Ms. Lorna McClusky were deficient in their representation of [the petitioner].

There is nothing in this record that would cause the Court to question for a moment that these lawyers were not prepared in their representation of [the petitioner].

There is nothing in this record that would indicate that these lawyers were somehow misguided in not trying to negotiate a settlement on this case when what is before the Court is that there was never a formal offer made on this case by Mr. Zak.

. . . .

And it's just pure speculation. It's pure second-guessing. It's pure, "Let me guess at what this lawyer could have done better."

And, between the two of them, they cannot even tell me how many first degree murder cases they have tried. I would venture a guess - - I would venture a guess that Mr. Massey - - Ms. McClusky and Mr. Massey collectively have tried more first degree murder cases than any lawyers in the State of Tennessee. If you compared them with lawyers across the country, I'll be surprised if there's any lawyers that have tried more first degree murder cases than Mr. Massey and Ms. McClusky.

And it is almost painful when lawyers start attacking other lawyers and saying - - my goodness. These lawyers did the absolute best they

could. Did not the best they could, but did an exemplary job. And even getting Mr. Cook a new trial in the beginning, which this Court finds, frankly, that there was skeptical grounds in which that motion was granted.

But convinced another Judge to grant a new trial, tried this case, and did absolutely everything that any reasonable lawyer could have done. And a jury found Mr. Cook guilty of first degree murder in another trial.

And it is something that bothers this Court and it's something that's unique to Tennessee. I practiced law in Houston for eight years. 23 felony courts. Not courts, 23 felony courts that dealt with felony cases.

In the eight years in the State of Texas, Harris County, Texas, I may have seen three or four post-conviction petitions in 23 felony courts in eight years. But it's part of the game - - and I do use the word game - - that goes on in Tennessee, goes on in Shelby County, Tennessee.

A person is tried. A person is tried and convicted by a jury, receives excellent representation from his lawyers, and will turn around on a post-conviction and sue a lawyer, in essence, and say, "My lawyers did a bad job. They did an absolutely horrible job for me and, therefore, I should be given a third trial."

Mr. Cook has wholly failed to prove ineffective representation. He's wholly failed to prove that he was prejudiced by his attorneys. He has wholly failed to sustain any of these allegations that are contained in some 70-plus pages of writings as to why Ms. McClusky and Mr. Massey ineffectively represented him. This Court finds that Lorna McClusky and Bill Massey, William Massey, provided excellent representation for Mr. Cook.

The petitioner timely appealed and raised several issues on appeal, including his claim that the post-conviction judge should have recused himself. A majority of the Court of Criminal Appeals affirmed the post-conviction judge's denial of post-conviction relief and deemed the petitioner's challenge to the post-conviction judge's impartiality waived because the petitioner failed to file a motion seeking the post-conviction judge's recusal. See Cook v. State, No. W2018-00237-CCA-R3-PC, 2019 WL 2122798, at *13 (Tenn. Crim. App. May 14, 2019), perm. app. granted (Tenn. Oct. 14, 2019). Presiding Judge John Everett Williams dissented, concluding that "the post-conviction judge's comments at the conclusion of the hearing were so egregious that the judge's impartiality might reasonably be questioned[.]" Id. at *13 (Williams, P.J., dissenting) (citing Tenn. Sup. Ct. R. 10, R.J.C. 2.11(A) ("A judge shall disqualify himself or herself in any

- 7 -

proceeding in which the judge's impartiality might reasonably be questioned . . . .")). Judge Williams would have reversed the post-conviction judge's order denying the petitioner post-conviction relief and remanded for a new hearing before a different judge. Id.

Thereafter, we granted the petitioner's application for permission to appeal.

## II. Standard of Review

The issue presented in this appeal—whether the post-conviction judge's comments at the conclusion of the hearing establish that the judge should have recused himself because his impartiality might reasonably be questioned—is a question of law to which de novo review applies. See Tenn. Sup. Ct. R. 10B, § 2.01 (stating that de novo review applies to a trial court's denial of a motion for disqualification or recusal, whether the issue is raised in an accelerated interlocutory appeal as of right under Tennessee Supreme Court Rule 10B or in an appeal as of right under Tennessee Rule of Appellate Procedure 3).

## III. Analysis

Tennessee litigants are entitled to have cases resolved by fair and impartial judges. Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001); Leighton v. Henderson, 414 S.W.2d 419, 421 (Tenn. 1967) (stating that the Tennessee Constitution entitles litigants to the "cold neutrality of an impartial court"); Kinard v. Kinard, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998) (same); Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (same). Judges must be fair and impartial both in fact and in perception. State v. Reid, 213 S.W.3d 792, 815 (Tenn. 2006) ("'[T]he preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial.'" (quoting Kinard, 986 S.W.2d at 228)). As this Court declared more than one hundred years ago, "it is of immense importance, not only that justice shall be administered . . . but that [the public] shall have no sound reason for supposing that it is not administered." In re Cameron, 151 S.W. 64, 76 (Tenn. 1912); see also State v. Lynn, 924 S.W.2d 892, 898 (Tenn. 1996) ("It is the appearance that often undermines or resurrects faith in the system. To promote public confidence in the fairness of the system and to preserve the system's integrity in the eyes of the litigants and the public, 'justice must satisfy the appearance of justice.'" (quoting Offutt v. United States, 348 U.S. 11, 13 (1954)).

To these ends, the Tennessee Rules of Judicial Conduct declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, R.J.C. 1.2. Another provision

- 8 -

declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." Tenn. Sup. Ct. R. 10, R.J.C. 2.2. As used in the Rules of Judicial Conduct, "impartiality" and "impartially" mean the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Tenn. Sup. Ct. R. 10, Terminology "Impartial," "Impartiality," "Impartially."

If a litigant knows of facts indicating that a judge cannot fulfill the judicial obligations of fairness and impartiality, the litigant should request the judge's recusal by filing a written motion. See Tenn. Sup. Ct. R. 10B, § 1.01. Recusal motions should be filed when "the facts forming the basis of that motion become known." Bean v. Bailey, 280 S.W.3d 798, 803 (Tenn. 2009) (citing Davis v. Tenn. Dep't of Emp't Sec., 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)). A litigant cannot manipulate the judicial process by knowing of allegedly improper judicial conduct but remaining silent until after the legal matter has been resolved unfavorably to the litigant. Id. (quoting Tenn. Dep't of Emp't Sec., 23 S.W.3d at 313). Therefore, a claim of judicial bias may be deemed waived if a litigant either fails to file a written recusal motion or fails to file a written recusal motion in a timely manner after learning the facts that form the basis of the request. Id. (citing Tenn. Dep't of Emp't Sec., 23 S.W.3d at 313).

In some circumstances, however, judges have an obligation to recuse themselves even if litigants do not file recusal motions. Tenn. Sup. Ct. R. 10, R.J.C. 2.11, cmt. 2 ("A judge is obligated not to hear or decide matters in which disqualification is required, even though a motion to disqualify is not filed."). Rule of Judicial Conduct 2.11(A) enumerates six specific circumstances in which recusal is required, even if a motion for recusal is not filed. Tenn. Sup. Ct. R. 10, R.J.C. 2.11(A)(1)-(6). But the six listed circumstances are illustrative not exclusive, and "[a] judge *shall* disqualify himself or herself in *any* proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. Sup. Ct. R. 10, R.J.C. 2.11(A) (emphases added).

Rule of Judicial Conduct 2.11 recognizes that "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." Liberty Mut. Ins. Co., 38 S.W.3d at 565 (citing Alley, 882 S.W.2d at 820). As a result, Rule of Judicial Conduct 2.11 incorporates the objective standard Tennessee judges have long used to evaluate recusal motions. In re Hooker, 340 S.W.3d 389, 395 (Tenn. 2011) (citing State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008); Liberty Mut. Ins. Co., 38 S.W.3d at 564-65). Under this objective test, recusal is required if "'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" Liberty Mut. Ins. Co., 38 S.W.3d at 564-65 (quoting Alley, 882 S.W.2d at 820). Rule of Judicial Conduct 2.11 and the objective standard it embraces reflect that

our system of law has always endeavored to prevent even the probability of unfairness . . . . Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice."

In re Murchison, 349 U.S. 133, 136 (1955) (quoting Offutt, 348 U.S. at 14).

Applying these principles, we hold that Rule of Judicial Conduct 2.11 obligated the post-conviction judge to recuse himself even though the petitioner did not file a motion for recusal. Our conclusion that a person of ordinary prudence in the judge's position knowing all of the facts known to the judge would find a reasonable basis for questioning the judge's impartiality is based on the comments the post-conviction judge made at the conclusion of the hearing when denying the petitioner relief. The post-conviction judge reiterated his longstanding professional acquaintance and familiarity with the petitioner's trial attorneys and his opinion that they are "[t]wo of the most preeminent lawyers" in the country and in the world. He recited their affiliations with legal professional organizations. He described the petitioner's claims of ineffective assistance of counsel against Mr. Massey and Ms. McClusky as "almost absolutely laughable." He characterized the petitioner's appointed counsel as "sitting back as a Monday morning quarterback and evaluating their performance hindsight." He declared it "painful when lawyers start attacking other lawyers." Under the applicable objective standard, these statements communicate that the post-conviction judge's decision to deny the petitioner relief was based on the post-conviction judge's personal knowledge and high personal regard for the professional abilities, skills, and reputations of the petitioner's trial attorneys and his belief that trial counsel were so preeminent, skilled, and knowledgeable that they could never be ineffective in any case. These comments constitute a reasonable basis for questioning the post-conviction judge's impartiality, which requires "maintenance of an open mind in considering issues[.]" Tenn. Sup. Ct. R. 10, Terminology "Impartial," "Impartiality," "Impartially."

Even more problematic and troubling, however, are the post-conviction judge's disparaging comments about not only Tennessee's post-conviction procedures but also post-conviction petitioners and their attorneys. The post-conviction judge described post-conviction claims as unique to Tennessee and as a "game" "that goes on in Tennessee, goes on in Shelby County, Tennessee." He reiterated the word "game" to emphasize his distaste for post-conviction proceedings and said the process "bothers" him. He compared post-conviction petitioners and their attorneys to generals in a war who observe a battle from a hill "[and] don't do anything" but later tell those who fought "how they should have fought that battle differently." The post-conviction judge expressed a preference for the law of Texas, where he had practiced for eight years, explaining that he

had worked in twenty-three felony courts but had dealt with only three or four post-conviction petitions during that time. As Judge Williams explained in his dissenting opinion:

> It is completely inappropriate for a judge to refer to a procedure enacted by the [L]egislature to ensure that a defendant's constitutional right to effective assistance of counsel is protected as a "game." Even though the judge disagree[d] with the law in Tennessee and preferred to follow the law in Texas, he swore an oath to follow the law in Tennessee and not Texas.

Cook, 2019 WL 2122798, at *16 (Williams, P.J., dissenting). The post-conviction judge should have been acutely aware of the impropriety of his remarks as he had already been admonished in another case for expressing his disagreement with Tennessee law concerning pretrial bonds and his preference for Texas law. Id. (citing State v. Kizzie, No. W2015-01977-CCA-R8-CO (Order) (Tenn. Crim. App. Dec. 3, 2015)). Applying the objective test, we have no hesitation in concluding that, to a reasonable person of ordinary prudence knowing all the facts known to the post-conviction judge, these comments would indicate that the post-conviction judge's decision denying the petitioner relief was based as much on the post-conviction judge's disdain for and disagreement with Tennessee law on post-conviction procedures and dissatisfaction with post-conviction petitioners and their lawyers as on the evidence presented at the hearing.

Moreover, these inappropriate comments cast a different light on a number of the post-conviction judge's actions and rulings during the hearing. For instance, the post-conviction judge harshly admonished the petitioner's appointed counsel at various times throughout the hearing, sua sponte questioned the status of Dr. Walker's license, interrupted the petitioner's father's testimony more than once to instruct him to limit his answers to the questions asked even though the State had not objected, ruled against the petitioner on almost all evidentiary questions, interjected information into the post-conviction hearing that the judge had obtained from lawyers in Shelby County and witnesses in other cases, vigorously examined the petitioner's witnesses using leading questions that were clearly designed to elicit testimony unfavorable to the petitioner's post-conviction claims, and supplied information from notes the post-conviction judge had made during the petitioner's trial when Mr. Massey, Ms. McClusky, and Mr. Zak were unable to recall enough details of the trial to answer questions. The post-conviction judge also extensively questioned Ms. McClusky and Mr. Massey and elicited proof about their professional accomplishments, accolades, experience and qualifications— testimony that the attorneys for the State had not elicited by their questioning. The post-conviction judge summarily and inexplicably denied the petitioner's request to leave open the proof until Mr. Massey reviewed the petitioner's case file even after Mr. Massey acknowledged that he had not reviewed the case file and could have forgotten the offer about which Ms. McClusky testified. Additionally, the post-conviction judge sua sponte

invoked the rule of witness sequestration and later sua sponte applied it to exclude the petitioner's mother from testifying on her son's behalf at the hearing. None of these actions standing alone is a basis for recusal. Trial courts certainly may admonish counsel and witnesses, question witnesses, and rule against litigants. See Liberty Mut. Ins. Co., 38 S.W.3d at 565. However, when a judge makes comments at the conclusion of a hearing of the sort at issue here, a reviewing court may properly consider the entire record of the proceeding when evaluating whether those comments are a basis to conclude that the judge's impartiality might reasonably be questioned. Here, the record supports our conclusion that the post-conviction judge should have recused himself because his impartiality might reasonably be questioned based on these inappropriate comments. See Leighton, 414 S.W.2d at 420 (reversing for a new hearing before a competent judge based on comments the trial court made); In re Cameron, 151 S.W. at 76, 79 (remanding for a new trial because the judge made comments indicating that he had already decided the case). See also Buschardt v. Jones, 998 S.W.2d 791, 803-04 (Mo. Ct. App. 1999) (reversing and remanding for a new trial before a different judge because comments the original trial judge made in his oral ruling created an appearance of partiality).

The State argues that the petitioner waived this claim by failing to move for recusal either when the post-conviction judge made the inappropriate comments or during the fifty-one days that elapsed between the oral ruling and entry of the order denying relief. We conclude that waiver is not determinative in the circumstances of this case. As already explained, Rule of Judicial Conduct 2.11 obligates a judge to recuse himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned," even if no recusal motion is filed. In the circumstances of this case, where Rule of Judicial Conduct 2.11 obligated the post-conviction judge to recuse, the petitioner's failure to file a recusal motion is not dispositive. Here, the post-conviction judge chose to make remarks that were not only egregious but also global in nature, expressing disdain for the entire class of proceedings he was charged with conducting. Under these unique circumstances, no recusal motion was required; the post-conviction judge should have known that the remarks compelled him to recuse himself.

Because the post-conviction judge should have disqualified himself under Rule of Judicial Conduct 2.11, the petitioner is entitled to a new hearing before a different judge on his petition for post-conviction relief. We express no opinion on the merits of the petitioner's underlying post-conviction claims, as the evaluation of those claims must be made by the newly assigned judge based on the evidence presented at the new hearing.

We stop short of reaching the broader question *implicitly* presented by this appeal, which is: whether the post-conviction judge's inappropriate comments in this case call his impartiality into reasonable question and require his disqualification from all future post-conviction cases. An argument certainly can be made for answering this question in the

affirmative.  However, we decline to do so at this time.  First, this decision should serve as an unmistakable admonition to this judge, and all other Tennessee judges, to refrain from such inappropriate comments in future cases.  It also should serve as a crystal-clear reminder to this judge, and every other Tennessee judge, of the obligation to recuse without any motion in any proceeding in which the judge's impartiality might reasonably be questioned.  We have no reason to doubt that Judge Coffee will fulfill these obligations in future cases in compliance with the oath he has taken as a judge.  See Tenn. Code Ann. § 17-1-104 (2009 & Supp. 2019) ("Before entering upon the duties of office, every judge . . . is required to take an oath or affirmation to support the constitutions of the United States and that of this state, and to administer justice without respect of persons, and impartially to discharge all the duties incumbent on a judge . . . to the best of the judge's . . . skill and ability.").  We decline to deny to judges the presumption that is applied to all other public officials in Tennessee.  West v. Schofield, 460 S.W.3d 113, 131 (Tenn. 2015) ("We are mindful that public officials in Tennessee are presumed to discharge their duties in good faith and in accordance with the law." (citing Reeder v. Holt, 418 S.W.2d 249, 252 (Tenn. 1967); Mayes v. Bailey, 352 S.W.2d 220, 223 (Tenn. 1961); Jackson v. Aldridge, 6 S.W.3d 501, 503 (Tenn. Ct. App. 1999); State ex rel. Witcher v. Bilbrey, 878 S.W.2d 567, 576 (Tenn. Ct. App. 1994))).

Nevertheless, we take seriously this Court's obligation to ensure that justice in Tennessee remains impartial both in fact and in appearance.  In re Cameron, 151 S.W. at 76; Lynn, 924 S.W.2d at 898.  As a result, if, in a future case, this Court determines that a judge has habitually made inappropriate comments that call into reasonable question the judge's impartiality in a particular category of cases, this Court will not hesitate to hold, in the exercise of its supervisory power over the Judicial Department, that the judge is disqualified from hearing all future cases in that category.  See Tenn. Const. art. VI, § 1; Moore-Pennoyer v. State, 515 S.W.3d 271, 276 (Tenn. 2017) (citing cases); see also Tenn. Code Ann. § 16-3-501 (2009) (describing this Court's "general supervisory control over all the inferior courts of the [S]tate"); id. § 16-3-503 (declaring that the Supreme Court has "the power inherent in a court of last resort"); id. § 16-3-504 (declaring that the Supreme Court has "a broad conference of full, plenary[,] and discretionary power").  The circumstances of this appeal placed it only inches away from the threshold that must be crossed for this Court to invoke that extraordinary remedy.

## IV. Conclusion

For the reasons stated herein, the judgment of the Court of Criminal Appeals is reversed; the judgment of the trial court is vacated; and this matter is remanded to the trial court for a new post-conviction hearing before a different judge. Costs of this appeal are taxed to the State of Tennessee.

_____
CORNELIA A. CLARK, JUSTICE