# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 6, 2023

## THOMAS FLEMING MABRY v. THE BOARD OF PROFESSIONAL RESPONSIBILITY OF THE TENNESSEE SUPREME COURT

**Direct Appeal from the Chancery Court**
**Chancery Court for Knox County**
No. 202551-2        William B. Acree, Senior Judge

———————————————————

**No. E2022-00945-SC-R3-BP**

———————————————————

This is an appeal in a lawyer-disciplinary proceeding involving Tennessee attorney Thomas Fleming Mabry. In March 2019, the Board of Professional Responsibility filed a petition for discipline against Mr. Mabry charging him with numerous infractions based on complaints from several different parties. After the onset of the COVID-19 pandemic, Mr. Mabry refused to participate in depositions, either in-person, telephonically, or over videoconference. At his final disciplinary hearing conducted via Zoom, Mr. Mabry briefly connected, by audio only, and objected to holding the hearing virtually and to the Board introducing depositions of unavailable witnesses. He requested an indefinite continuance. He ended the connection. The hearing continued without Mr. Mabry's participation, and the Hearing Panel found him in violation of multiple Tennessee Rules of Professional Conduct. The panel permanently disbarred Mr. Mabry and ordered him to make restitution. Mr. Mabry appealed to the chancery court claiming several procedural violations, but the chancery court found no merit in his arguments. Mr. Mabry has now filed a direct appeal to this Court, raising the same procedural challenges. Upon review, we agree with the judgments of the Hearing Panel and chancery court—disbarment is the appropriate sanction for Mr. Mabry's actions.

**Tenn. Sup. Ct. R. 9, § 33.1(d); Judgment of the Chancery Court Affirmed.**

ROGER A. PAGE, J., delivered the opinion of the court, in which HOLLY KIRBY, C.J., and JEFFREY S. BIVINS, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Thomas Fleming Mabry, Asheville, NC, pro se.

James W. Milam, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility.

## OPINION

### I. FACTS & PROCEDURAL BACKGROUND

In March 2019, the Board of Professional Responsibility ("the Board") filed a petition for discipline against Thomas Fleming Mabry.[1] The incidents at issue in the present disciplinary matter involve four clients. In October 2014, Mr. Mabry prepared a will for a now deceased North Carolina resident, Kenneth McKeon. Mr. Mabry was not, and apparently has never been, licensed to practice law in North Carolina. Mr. McKeon sold a property in exchange for a promissory note in the amount of $28,000. The buyer made payments directly to Mr. McKeon until his death in November 2014. Mr. Mabry wrote a check for $344.50 to the county clerk as payment for court costs related to probate of the estate. The check returned unpaid because it was drawn on a closed IOLTA account. The proceeds of the promissory note were bequeathed to Linda Russell. Mr. Mabry directed the buyer to send all her payments to his office so he could send the payments to Ms. Russell. Mr. Mabry received the payments but did not forward them to Ms. Russell. From May 2015 to August 2016, the buyer sent payments of $500 per month to Mr. Mabry totaling $8,000. The buyer then began sending the payments directly to Ms. Russell.

Around January and November 2015, while suspended in Tennessee and not licensed in North Carolina, Mr. Mabry held himself out as a licensed attorney to another North Carolina resident, Ronda Ingraham. Ms. Ingraham retained Mr. Mabry to prepare her will and represent her in the termination of a domestic partnership. He prepared legal documents and negotiated with opposing counsel. Ms. Ingraham paid a total of $5,175 in legal fees. He did not refund any of the money.

Mr. Mabry also billed another client for services he did not provide and failed to deposit funds into his IOLTA account. He continued representing that particular client even

---

[1] Mr. Mabry was licensed in Tennessee in 1980. Mr. Mabry's history with the Board goes back to 1991, and he has previously been a litigant in this Court. He received public censures in 1991 and 1993; private informal admonitions in 2001, 2002, and 2011; a private reprimand in 2002; an eleven-month and twenty-nine-day suspension in 2008; a forty-five-day suspension in 2014; and a two-year suspension in 2019. The 2014 matter was litigated in this Court. *See Mabry v. Bd. of Pro. Resp.*, 458 S.W.3d 900 (Tenn. 2014). In 2015, Mr. Mabry filed a notice of disability with this court, pursuant to Tennessee Supreme Court Rule 9, section 27.4(a), in which he contended that he was suffering from a mental illness that prevented him from responding to or defending against the disciplinary proceeding pending against him. *Mabry v. Bd. of Pro. Resp.*, 563 S.W.3d 192, 193 (Tenn. 2018). A letter from a licensed clinical social worker stated that "Mr. Mabry expressed during his mental health assessment [] that . . . '[his] suicidal thoughts only occur[red] when [he felt] pressured by complaints filed against him as he [was] attempting to close his law practice.'" *Id.* at 193. The hearing panel found that Mr. Mabry was not incapacitated because there "was no evidence in the record . . . or anywhere else, 'that [he] suffers from a mental infirmity rendering him unable to respond [to] or defend against the pending disciplinary proceeding.'" *Id.* at 194 (first alteration in original). The chancery court and this Court both affirmed the hearing panel's decision. *Id.* at 194, 195.

after he was suspended and did not inform the judge of his suspension for several months. He represented other clients in a foreclosure sale after the clients sold their property and the buyer defaulted on the loan. The IRS recorded a lien on the property. His clients did not discover the IRS lien until they attempted to sell the property again. He continued billing the clients during his period of suspension.

In January 2020, Board Disciplinary Counsel Travis M. Lampley sent Mr. Mabry an email stating that he would be filing a motion to continue a scheduled hearing for later that month because a witness would be unavailable on the scheduled date and a continuance would give the parties more time to attempt to resolve the issues out of court. Mr. Mabry responded, stating that he had "[n]o objection to this Motion, so long as no more witnesses nor discovery be allowed to be filed and/or presented at the future hearing other than those witnesses and that discovery which has been previously submitted." According to the record, Mr. Lampley never responded to Mr. Mabry's email.[2] Mr. Lampley filed the motion to continue, and the next day the Hearing Panel held a telephonic status conference, at which they heard arguments from Mr. Lampley and Mr. Mabry. The Panel granted the motion and reset the hearing for March 11, 2020. The conditions Mr. Mabry requested were not included in the order. The hearing was again rescheduled from March 11, 2020, to April 27 and 28, 2020.

By this time, the pandemic necessitated "stay-at-home" orders.[3] The Tennessee Supreme Court Order Suspending In-Person Court Proceedings was extended over the following year, which allowed courts to conduct hearings and trials over online videoconferencing platforms. Order Suspending In-Person Court Proceedings, *In re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020) (declaring a state of emergency and urging "all judges and court clerks . . . to limit in-person courtroom contact as much as possible by utilizing available technologies, including alternative means of filing, teleconferencing, email, and video conferencing"). In April 2020, the Hearing Panel ruled, over Mr. Mabry's objection, that the Board could present the testimony of unavailable witnesses by deposition as long as the Board complied with Tennessee Rule of Civil Procedure 32.01(3).[4] The Hearing Panel agreed to address the matter "anew" in the

---

[2] Mr. Lampley filed an affidavit stating that he "did not respond to nor accept the conditions stated by Mr. Mabry in his email of January 27, 2020."

[3] *CDC Museum COVID-19 Timeline*, Centers for Disease Control and Prevention, https://www.cdc.gov/museum/timeline/covid19.html (last visited Nov. 15, 2023).

[4] Rule 32.01(3) states in relevant part: "The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds that the witness is 'unavailable' as defined by Tennessee Rule of Evidence 804(a)."

event that Mr. Mabry presented evidence of an agreement between himself and Mr. Lampley by an appropriate motion.

In May 2020, Disciplinary Counsel Joseph K. Byrd began representing the Board, replacing Mr. Lampley. Mr. Byrd filed a motion for leave to depose complainants Ronda Ingraham and Linda Russell because they lived more than 100 miles from the hearing, which was to take place in Knoxville. The Board sought to depose Ms. Ingraham by phone because she resided in Maryland. The Board asked for leave to travel to Georgia to depose Ms. Russell in person. Mr. Mabry objected, citing the alleged agreement between himself and Mr. Lampley. In his brief on appeal, Mr. Mabry claimed that he "never received the Notice of the taking of deposition of Linda Russell by mail and the emailed Notice of Deposition . . . went to spam. . . ." He also filed a motion for a continuance, stating that he was sixty-five years old, at higher risk for COVID-19, and could not and would not "enter the home or [] any physical proximity of any witness who may or may not have been tested for COVID-19." He stated that requiring him to participate would violate the Tennessee Supreme Court's order regarding the pandemic, which charged judges with the "responsibility of ensuring that core constitutional functions and rights are protected."[5]

The Board objected to Mr. Mabry's request for an indefinite continuance, arguing that this reliance on the Court's May 2020 order regarding the pandemic was "misplaced" because the order actually encouraged courts to use remote-conferencing technology to prevent in-person contact. In addition, the Board pointed out that Mr. Lampley never responded to Mr. Mabry's conditions, that Mr. Lampley submitted an affidavit denying that he reached an agreement with Mr. Mabry, that the Hearing Panel had already authorized the Board to present testimony of unavailable witnesses by deposition, and that Mr. Mabry failed to timely object[6] to the Second Scheduling Order. By an order filed on August 11, 2020, the Hearing Panel continued the hearing until September 29, 2020, to be conducted telephonically, and it instructed the Board to provide Mr. Mabry with a means to participate in the depositions by Zoom, telephone, or some other platform if he did not wish to participate in person.

Later in August 2020, Mr. Byrd filed two notices of deposition stating that he would be deposing Ms. Ingraham by telephone and Ms. Russell in person in Atlanta. Mr. Mabry responded that he would not participate in the depositions and would "not be available for

---

[5] He also asserted that there was "no emergency whatsoever requiring this matter to go to hearing in late July, 2020," that he "should not be required to remain for two (2) days in the presence of individuals who may or may not have been exposed to the COVID-19 virus during the ongoing pandemic," and that he would be "prejudiced by any inability to confront and cross-examine live witnesses."

[6] According to the Board, Mr. Mabry filed his written objection "after the Board filed its Motion for Leave to Take Depositions of Unavailable Witnesses for Use at Trial filed on June 5, 2020, five months after the Second Scheduling Order was entered." (Emphasis removed).

any deposition or other matter until the Hearing Panel telephone conference on September 29, 2020," and would object to admission of the deposition notices. He filed an objection and a motion to set a scheduling conference, claiming to be unavailable "for the remainder of August [and] much of the month of September 2020" due to "previous work commitments scheduled for the time and date of the depositions and into the future." He did not provide specific information concerning those commitments, and he asserted that the emailed notice was "an unreasonable request to take discovery depositions in contravention of the letter, intent and spirit of the January, 2020 agreement" between himself and Mr. Lampley. In an order filed August 25, 2020, the Hearing Panel ruled that the Board's actions were authorized by the August 10 order. On August 25, the Hearing Panel overruled Mr. Mabry's objection and denied his motion for a scheduling conference. Mr. Mabry did not participate in either deposition.

In November 2020, this Court issued an order extending the State of Emergency. In an order specific to the Board, this Court suspended in-person proceedings through February 28, 2021 and provided that "such proceedings shall be conducted during the period of suspension by telephone, video, teleconferencing, or other means that do not involve in-person contact." Order Continuing Suspension of Board of Professional Responsibility's Proceedings and Extending Deadlines, *In re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Oct. 27, 2020). However, the Court did provide a procedure for parties to request exceptions and authorized hearing panels to rule on such requests "based on the particular circumstances of th[e] matter." *Id.* To request an exception, the order provided that "[t]he petitioner shall provide justification for the necessity of conducting the particular proceeding in an in-person format." *Id.*

The final disciplinary hearing occurred in January 2021 via Zoom. Mr. Mabry claims that he tried to connect twice unsuccessfully, and then connected to the hearing by audio only. He made a statement objecting to holding the final hearing virtually and to the Board's plan to introduce depositions of unavailable witnesses for proof at the hearing. He requested an indefinite continuance until in-person proceedings resumed. He said that proceeding via Zoom was a deprivation of his due process right to cross-examine witnesses live and in real time. He advised the Hearing Panel that he would not participate further in the disciplinary hearing and ended the connection.[7]

---

[7] His characterization of this was as follows:

The "Zoom" format failed, as the links provided for access to a live video hearing failed twice . . . as no video hookup for [Mr. Mabry] was secured by [the Board], thus effectively eliminating [Mr. Mabry's] meaningful participation in the hearing. Appellant gave an [o]pening [s]tatement and when it appeared that [the Board] could not or was not interested in providing him full access to the hearing, he left the [h]earing. . . . All events leading to the filing of [the Board's] Disciplinary Petition occurred during the period of time that [Mr.

After his departure, the hearing proceeded. The Board introduced the transcripts of Ms. Russell's in-person deposition and Ms. Ingraham's telephonic deposition, and it called four additional witnesses to testify via Zoom. The Hearing Panel found that Mr. Mabry violated Tennessee Supreme Court Rule 8, Rules of Professional Conduct 1.1 (Competence); 1.3 (Diligence); 1.4(a) (Communication); 1.5(a) (Fees); 1.15(c) (Safekeeping Property); 1.16(d)(1), (2), (4), and (6) (Declining or Terminating Representation); 5.5 (Unauthorized Practice of Law; Multijurisdictional Practice of Law); and 8.4(a)–(c) and (g) (Misconduct). Regarding Mr. Mabry's conduct in North Carolina, where he was not licensed to practice law, the Hearing Panel found that he violated two North Carolina General Statutes, sections 84-4 (discussing persons qualified to engage in the practice of law) and 84-8 (finding any person engaged in the unauthorized practice of law is guilty of a misdemeanor). The Hearing Panel also found him in violation of North Carolina Rules of Professional Conduct 1.5(a) (Fees), 5.5(a) and (b)(2) (Unauthorized Practice of Law; Multijurisdictional Practice of Law), and 8.4(a)–(c) (Misconduct).[8] The Panel identified disbarment as the presumptive baseline sanction under the ABA Standards for Imposing Lawyer Sanctions, citing standards 4.11, 4.41(a)–(c), 4.51, 4.61, 5.11(a)–(b), 6.11, and 7.1. It applied seven aggravating factors: (1) prior disciplinary offenses, (2) dishonest or selfish motive, (3) pattern of misconduct, (4) multiple offenses, (5) refusal to acknowledge the wrongful nature of his conduct; (6) substantial experience in the practice of law, and (7) indifference to making restitution. The panel permanently disbarred Mr. Mabry and ordered him to make restitution totaling $20,819.

Mr. Mabry appealed to the chancery court, challenging only certain procedural aspects of the disciplinary hearing as being "made upon unlawful procedure." Tenn. Sup. Ct. R. 9, § 33.1(b)(3). The procedural aspects he challenged were the handling of the alleged agreement between himself and Mr. Lampley, the introduction of the depositions as evidence, and the video format of the disciplinary hearing. The chancery court affirmed the Hearing Panel's decision in all respects, stating that any efforts by the Board to aid Mr. Mabry were "unlikely" to "alleviate[] an ignorance that was willful." Mr. Mabry now appeals to this Court, raising the same procedural challenges.

Mabry] was suffering from a disability caused in significant part from stress due to the numerous and continuous disciplinary complaints required to be defended.

(Emphasis added) (citations omitted). He closed his opening statements with: "and now I'm going to go get my C[OVID-19] vaccine. You all have a good day and have a good hearing."

[8] *See* Tennessee Supreme Court Rule 8, RPC 8.5, which sets out the choice of law provisions for attorney-disciplinary actions and provides that, in the exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied for conduct not related to a matter pending before a tribunal are the rules of the jurisdiction in which the lawyer's conduct occurred or had its predominant effect, if the predominant effect is in a jurisdiction different from where the conduct occurred. Here, some of Mr. Mabry's conduct occurred in North Carolina and also had its predominant effect there.

## II. STANDARD OF REVIEW

The Tennessee Supreme Court is the source of authority for the Board and its functions. *In re Vogel*, 482 S.W.3d 520, 530 (Tenn. 2016) (citing *Long v. Bd. of Pro. Resp.*, 435 S.W.3d 174, 178 (Tenn. 2014)). "As a part of our duty to regulate the practice of law in this state, we have the ultimate disciplinary responsibility for violations of the rules governing our profession." *Hughes v. Bd. of Pro. Resp.*, 259 S.W.3d 631, 640 (Tenn. 2008) (citing *Doe v. Bd. of Pro. Resp.*, 104 S.W.3d 465, 469–70 (Tenn. 2003)). We examine disciplinary judgments pursuant to this Court's "inherent power" and "essential and fundamental right" to enforce the rules regulating the practice of law. *Vogel*, 482 S.W.3d at 530 (quoting *Hughes*, 259 S.W.3d at 640). Our standard of review is the same as that of the chancery court, generally giving deference to the Hearing Panel's weighing of the evidence. Reversing the Hearing Panel's decision is only appropriate when the decision fits one of the following requirements:

> (1) [I]n violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in light of the entire record.

Tenn. Sup. Ct. R. 9, § 33.1(b); *see also Long*, 435 S.W.3d at 178.

## III. ANALYSIS

As he did before the chancery court, Mr. Mabry again raises procedural issues on appeal before this Court relating to the deposition testimony of certain unavailable witnesses and the videoconference format of the final disciplinary hearing. After review, we conclude his procedural challenges are without merit.

### A. Depositions of Unavailable Witnesses

Specifically, Mr. Mabry continues to assert in this Court that the Board should not have been permitted to depose two unavailable witnesses or offer their depositions as proof at the hearing. His argument is primarily based on his assertion of the alleged agreement with Mr. Lampley that no further depositions of unavailable witnesses would be taken if Mr. Mabry would agree to the Board's January 2020 motion for a continuance. Mr. Mabry argues that the chancery court abused its discretion by affirming the Hearing Panel's rejection of his assertion of an agreement and the Hearing Panel's decision to allow the Board to introduce the depositions at the disciplinary hearing. The Board maintains that the chancery court properly denied relief on this issue. We agree.

It is undisputed that the Hearing Panel's order granting the Board's motion to continue did not mention or adopt the conditions proposed by Mr. Mabry. After reviewing the record, we agree with the chancery court that there is simply no evidence of such an agreement between Mr. Mabry and Mr. Lampley. The record merely reflects Mr. Mabry's attempt to solicit an agreement. His request and Mr. Lampley's lack of response are not evidence of an agreement. Rather, an agreement requires the "mutual assent" of involved parties. *See Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 386 (Tenn. 1996) (quoting *Higgins v. Oil, Chem. & Atomic Workers*, 811 S.W.2d 875, 879 (Tenn. 1991) (A contract "must result from a meeting of the minds of the parties in mutual assent to the terms."); *McMahan v. McMahan*, No. E2004-03032-COA-R3-CV, 2005 WL 3287475, at *5 (Tenn. Ct. App. Dec. 5, 2005) (quoting 17 Am. Jur. 2d Contracts § 4 (1991)) ("[T]he existence of a contract, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances."); *Smith v. Murray*, 311 S.W.2d 591, 595 (Tenn. 1958) (quoting 12 Am. Jur. 2d Contracts § 40) ("[G]enerally speaking, mere silence or failure to reject an offer when it is made does not constitute an acceptance. Under some circumstances, however, silence and inaction operate as an acceptance, as where, under the circumstances, an inference of assent is warranted or at least where, under the circumstances, such an inference is required or is necessary.'"").

The second part of Mr. Mabry's deposition-related argument concerns notice. He asserts that, because the Board did not provide proper notice of the depositions, it should not have been allowed to depose the witnesses or offer the depositions as proof at the hearing. Mr. Mabry argues that Mr. Byrd's notice of deposition was not in keeping with the comity and professional courtesies that previously existed between Mr. Mabry and disciplinary counsel, that Mr. Byrd should have attempted to set the depositions by agreement, and that the notice was fatally flawed because it was served by email and failed to comply strictly with the rules concerning service by email found in Tennessee Rule of Civil Procedure 5.02(2).[9] He points out, apparently for the first time before this Court,

---

[9] Rule 5.02(2) provides as follows:

(a) Service on any attorney or on a party may also be made by emailing the person the document in Adobe PDF to the recipient's email address, which shall be promptly furnished on request. The sender shall include language in the subject line designed to alert the recipient that a document is being served under this rule.

(b) A sender who emails a document and is notified that it was not received must promptly furnish a copy of the document to the person who did not receive it.

(c) A document transmitted by email shall be treated as a document that was mailed for purposes of computation of time under Rule 6.

several technical violations of Rule 5.02 including that the email failed to identify the number of pages in the document and the date and time of transmission, and the physical address in the email was different from the address where the certificates were sent, among other things. He also states that the Board failed to provide an affidavit indicating why the witnesses were "unavailable for subpoena" or otherwise unavailable to testify.

Conversely, the Board argues that the Hearing Panel properly admitted the depositions and that the chancery court did not err in so holding. The Board points out that Mr. Mabry made only a general objection to the depositions, which was overruled, and he did not identify any reasons for his alleged unavailability on the dates noticed for the depositions.[10] According to the Board, the chancery court properly held that the notices of deposition Mr. Mabry received were not deficient as to content and timing and that they satisfied due process.

When considering Mr. Mabry's objection to the Hearing Panel's decision to permit the deposition proof, the chancery court explained that "[a]n attorney facing disciplinary charges in Tennessee is undoubtedly entitled to notice." *Moncier v. Bd. of Pro. Resp.*, 406 S.W.3d 139, 156 (Tenn. 2013). "Strictly speaking," wrote the chancery court, "notice in this context *refers to notice of the charges against the attorney, not specifically a deposition*." *See Mabry v. Bd. of Pro. Resp.*, 458 S.W.3d 900, 908 (Tenn. 2014) (stating that "procedural due process . . . includes notice of the alleged misconduct.") (emphasis added). Notice as a concept "concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter." 58 Am. Jur. 2d *Notice* § 2. As the chancery court indicated, notice of depositions must be "meaningful" "when a deposition is to be used as proof at trial" and "Mr. Mabry is entitled to be 'able to cross-examine the witnesses the Board called against him.'" *Mabry*, 458 S.W.3d at 908. The chancery court then aptly noted as follows:

> Mr. Mabry once again does not specify the exact problem with using the
> depositions at trial. There is no dispute between the parties that Ms. Ingraham

---

(d) For good cause shown, an attorney or self-represented party may obtain a court order prohibiting service of documents on that person by electronic mail and requiring that all documents be served under subsection (1) or (3).

[10] The chancery court noted the following:

Mr. Mabry's objection that he could not appear for a deposition for at least a month is dubious at best, and a vague reference to "previous work commitments scheduled for the time and date of the depositions and into the future" in Mr. Mabry's motion is hardly sufficient to render the notice provided inadequate. Accordingly, the [c]ourt finds Mr. Mabry's contention that he did not receive adequate notice . . . to be without merit.

(Citations omitted).

and Ms. Russell both resided more than 100 miles away from the place of the final hearing. Nor is there any dispute that [the] Board both sought and received orders from the [Hearing] Panel authorizing the depositions for proof and, in the case of Ms. Ingraham, the deposition to be conducted telephonically. In light of Mr. Mabry's concerns related to the COVID-19 [p]andemic, the [Hearing] Panel required the Board to provide Mr. Mabry with a means of appearing remotely for each deposition for proof. The Board did so. . . . The mere fact that the [Hearing] Panel heard, weighed, and rejected Mr. Mabry's concerns is of course no procedural error but due process itself—albeit with an unfavorable outcome [for Mr. Mabry].

We agree. In fact, it is arguable that Mr. Mabry's objections to the validity of service by email should be deemed waived because he did not include them with specificity in his motions before the Hearing Panel or chancery court. *See Waggoner v. Bd. of Pro. Resp.*, No. W2022-01294-SC-R3-BP, 2023 WL 4441951, at *3 n.12 (Tenn. July 11, 2023) (citing Tenn. R. App. P. 13(b); *State v. Bristol*, 654 S.W.3d 917, 925 (Tenn. 2022)) ("[I]ssues raised by parties that are unsupported by authority or citation to the record are waived."). Still, even if this Court found that the Board failed to strictly comply with Rule 5.02 in its deposition notices, Mr. Mabry failed to show prejudice. It is apparent from the record that Mr. Mabry received notice of the depositions. He responded that same day to the email transmitting the notice with an email of his own saying that he would not be available for any deposition until after the September 29, 2020 hearing. He also filed a motion that same date objecting to the notice. We conclude that the Board complied with the Rules of Civil Procedure for taking the depositions for proof, and the chancery court properly affirmed the Hearing Panel's decision to admit the depositions at the final disciplinary hearing.

### B. The Final Hearing

Mr. Mabry reiterates his argument that holding the disciplinary hearing over Zoom deprived him of his opportunity to be heard in a meaningful time and manner and that there was no exigency requiring the Zoom hearing. He claims that his inability to confront and cross examine live witnesses was prejudicial, especially since his license to practice law is on the line. He claims that the Board did not secure a "video hookup" for him, which "effectively eliminat[ed his] meaningful participation in the hearing." He says that there was "no [v]irtual [b]ailiff" to see why his video connection would not function and that no one sought to assist him so he could fully participate in the hearing. As a result, he believes this Court should set aside the Hearing Panel's decision and order a new in-person hearing.

In denying his due process claims, the chancery court noted that Mr. Mabry offered no authority for his argument that the Zoom hearing deprived him of a meaningful opportunity to be heard. He also failed to explicitly argue the exact deficiency with the Zoom hearing other than the Hearing Panel proceeding in his absence. *See Brooks v. Bd.*

*of Pro. Resp.*, 578 S.W.3d 421, 431 (Lee, J., concurring in part and not joining in part).[11] Still, the chancery court chose to address the argument on the merits and applied the balancing test the United States Supreme Court adopted in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (The Court balanced "the private interest that will be affected by the official action; [and] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," against "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."). The chancery court considered Mr. Mabry's law license being at stake, "the risk of an erroneous deprivation" of that interest through the use of a Zoom hearing, and "the probable value . . . of additional or substitute procedural safeguards." Those considerations were balanced against "the Government's interest, including the function involved and the fiscal and administrative burdens" associated with "the additional or substitute procedural requirement[s]" that Mr. Mabry proposed. *See id.* at 335.

Ultimately, the chancery court found that the *Mathews* factors weighed "overwhelmingly against Mr. Mabry's preferred procedure." The chancery court reasoned that because "Mr. Mabry was given more than a month's notice that the hearing would be conducted via Zoom[,] . . . [i]t [was] inconceivable that Mr. Mabry could not have figured out some solution to his difficulties with Zoom in that time." He was also given the option to simply call into the hearing rather than use video. "But rather than working towards any sort of solution, Mr. Mabry simply chose to end his participation. The risk of erroneous deprivation in this instance is therefore entirely a consequence of his own actions." We agree.

In *Moncier*, this Court considered Tennessee's attorney disciplinary procedures in light of the constitutional requirement of procedural due process. 406 S.W.3d at 156. We explained that "Tennessee's disciplinary process affords lawyers notice and an opportunity to be heard, as well as other protections, including the right to have counsel present, the opportunity to cross examine witnesses, and the right to present evidence." *Id.* (citing Tenn. Sup. Ct. R. 9, §§ 8.1 to 8.4). Since the pandemic, many courts have analyzed the fairness of judicial proceedings conducted remotely. *Compare Adoption of Patty*, 186 N.E.3d 184, 198–200 (Mass. 2022) (holding that the trial judge made no effort to remedy the technical difficulties experienced by several participants, creating obstacles for the self-represented mother and preventing her from participating meaningfully in the hearing to terminate her

---

[11] In her concurrence, Justice Lee noted the following:

> In short, [the litigant] failed to adequately make a procedural due process claim; at most, he only hinted at such a claim. That should have ended the discussion. . . . A party, not the Court, should identify the issues and provide adequate legal authority and argument. Tenn. R. App. P. 13(b). When a party fails to do so, it is not the Court's role to step in and fill in the gaps.

fundamental parenting rights), *and Kinder Morgan Prod. Co. v. Scurry Cnty. Appraisal Dist.*, 637 S.W.3d 893, 916-17 (Tex. App. 2021) (holding that the "technical difficulties" experienced "were beyond [the plaintiff's] control and prevented its lead counsel from accomplishing what he had been hired and expected to do–to effectively participate and represent his client's interests at trial"), *with In re Trinity S.*, No. E2021-00098-COA-R3-PT, 2021 WL 3486188, at *4 (Tenn. Ct. App. Aug. 9, 2021) (upholding the use of videoconferencing despite a claim that the procedure violated the parent's constitutional right to procedural due process where the mother claimed the trial should have been continued because in-person proceedings returned only five weeks later).

Simply put, Mr. Mabry's disciplinary hearing did not involve any type of unique problem or special circumstance that would lead this Court to be concerned that he was not given sufficient notice or an opportunity to be heard. There is no evidence in the record that Mr. Mabry had an unstable connection or other insurmountable technical difficulties. Nor is there evidence that he was incapable of participating in his hearing. Mr. Mabry noted in his brief that "Tennessee actually had" a "[g]uide for Zoom" that was posted to the tncourts.gov website in April 2020.[12] Mr. Mabry quotes the following section of the guide: "To host a hearing using Zoom, you will need web access and a web camera. We recommend using a desktop or laptop computer, but Zoom is also compatible with a tablet or cell phone." He also cites to the Board's Polices and Rules requiring the Hearing Panel to "take such steps as appropriate to ensure the maintenance of order, decorum, judicial temperament and avoidance of *ex parte* communications" and to "perform their duties impartially, competently and diligently and in a manner to uphold and promote independence, integrity and impartiality." Bd. of Pro. Resp. of the Tenn. Sup. Ct., *Policies and Rules of the Bd. of Pro. Resp. of the Tenn. Sup. Ct.*, (Mar. 25, 2020) https://docs.tbpr.org/pub/board-policies-3-25-20.pdf. It appears that Mr. Mabry was under the unrealistic expectation that the Board and/or disciplinary counsel were required to set up his videoconferencing device for participation in the hearing. No such requirement exists.

Mr. Mabry never requested an exception to the suspension of in-person proceedings. Instead, he requested an indefinite continuance. The Hearing Panel did not abuse its discretion by denying the continuance, and the chancery court properly affirmed the Hearing Panel's decision to hold the hearings via Zoom. We further note that the Hearing Panel found that Mr. Mabry committed many disciplinary infractions, and he does not challenge these findings on appeal, choosing instead to attack the procedure. We are unconvinced that a new, in-person hearing would have any impact on the outcome of his disciplinary proceedings.

---

[12] Indeed, the guide can be found on the Administrative Office of the Courts website. Admin. Off. of the Cts., *Online Ct. Using Zoom: Initial Setup & Use*, https://www.tncourts.gov/sites/default/files/docs/online_court_zoom_guide.pdf (last visited Dec. 20, 2023).

## IV. CONCLUSION

For the foregoing reasons, we affirm the chancery court's decision to uphold the findings and sanction imposed by the Hearing Panel. The Hearing Panel did not err in its findings, and we agree that disbarment is the appropriate sanction for Mr. Mabry's actions. Consequently, we conclude that Mr. Mabry is permanently disbarred from the practice of law pursuant to Tennessee Supreme Court Rule 9, section 12.1. Mr. Mabry shall be required to make restitution to the aggrieved parties pursuant to Rule 9, section 12.7. In the event restitution is made by the Tennessee Lawyers' Fund for Client Protection, Mr. Mabry will be responsible for reimbursement of the same amount. Costs of this appeal are taxed to Mr. Mabry.

_____
ROGER A. PAGE, JUSTICE